[No. 22696. Department Two. April 16, 1931.]

W. H. SMITH, as Guardian, Appellant, v. MATT NEALEY et al., Respondents.[1]

[1]Reported in 298 Pac. 345.

*R. L. Campbell,* for appellant.
*Kimball & Blake,* for respondents.

BEELER, J.—This is an action for personal injuries tried by a jury. At the conclusion of the plaintiff's testimony, the defendants challenged its legal sufficiency and moved for judgment of dismissal. This motion was sustained by the court, and from the judgment which followed, the plaintiff appealed.

The facts are: Appellants and respondents both reside in the small town or village of Plaza, Washington. Respondents are husband and wife, and prior to and on the 21st day of October, 1928, owned an automobile which was used as a family car. On the morning of that day, respondent Matt Nealey and a few of his friends contemplated going hunting a short distance south of the town of Plaza, and accordingly he placed his loaded Winchester repeating sawed-off shotgun on the rear seat of the automobile, and directed his thirteen year old son Harvey to drive the car to a point about one mile south of the town of Plaza in front of "Gilhause's." In obedience to this instruction, Harvey shortly· thereafter proceeded to drive the car to the place designated by his father, and, as he came within a short distance thereof, he stopped at a cross-roads

to wait for his father, who apparently was following a creek near the roadway.

In looking back, Harvey observed a fire in the town of Plaza, and thereupon turned the automobile about, drove back to the town and near to a house which was on fire, and, just as he drove up, appellants' young daughter Marybelle Smith, aged fourteen years, came out from the rear entrance of the house in a dressing gown, and in a very excited manner screamed "fire", and on observing Harvey, whom she knew, ran towards the automobile, which in the meantime had come to a stop. Harvey opened the front door of the car and invited her to have a seat alongside him, but, being thinly clad, she demurely hesitated and thereupon Harvey opened the rear door and the girl stepped into the rear seat, and Harvey, in putting the car into motion, gave it a quick lurch, thereby throwing the girl backward, and in some way tossed her feet into the air, at which time the gun was discharged, with the result that her left foot was partially shot off, and she was severely injured.

At the conclusion of appellants' testimony, the court dismissed the action, on the theory that the evidence failed to establish the relation of principal and agent between the father and the son. But the lower court overlooked a vital issue in the case: Whether it was negligence for the father, who had placed the loaded shotgun in the rear seat of his automobile, to entrust the car in the hands of his thirteen year old son Harvey. This issue or question should have been submitted to the jury. Courts almost universally hold that it is negligence *per se* for the owner to entrust his automobile to a minor under the age designated by statute for purposes of operation. *Repczynski v. Mikulak*, 157 N. E. (Ind. App.) 464; *Paschall v. Sharp*, 215 Ala. 304, 110 South. 387; *Hopkins v. Droppers*, 184

Wis. 400, 198 N. W. 738, 36 A. L. R. 1156, and annotated note.

The above authorities are bottomed on the theory that a person within the prohibitive age is presumed to be incompetent to drive an automobile unaccompanied by an adult. The liability of a parent who entrusts an automobile to his child rests not upon the relation of parent and child, nor, necessarily, upon that of principal and agent, but upon the negligence of the parent by entrusting the car in the hands of the child, and thereby aid in making it possible for the child to cause the injury. This principle has been recognized and applied by this court in the case of *Mitchell v. Churches,* 119 Wash. 547, 206 Pac. 6, 36 A. L. R. 1132. There we held that the owner of a car was liable in permitting its use by one known to be incompetent. We said:

"We consider it not only common sense, but common law and justice, that one cannot let or loan to another, knowing that other to be reckless and incompetent, and in such a condition that he would be reckless and incompetent, an instrumentality which may be a very dangerous one in charge of such a person. Berry on Automobiles (3d ed.), § 1040, states the rule to be:

" 'Aside from the relation of master and servant, the owner of an automobile may be rendered liable for injuries inflicted by its operation by one whom he has permitted to drive the same on the ground that such person, by reason of his want of age or experience, or his physical or mental condition, or his known habit of recklessness, is incompetent to safely operate the machine.

" 'An automobile is a machine that is capable of doing great damage if not carefully handled, and for this reason the owner must use care in allowing others to assume control over it. If he intrusts it to a child of such tender years that the probable consequence is

that he will injure others in the operation of the car, or if the person permitted to operate the car is known to be incompetent and incapable of properly running it, although not a child, the owner will be held accountable for the damage done, because his negligence in intrusting the car to an incompetent person is deemed to be the proximate cause of the damage.

" 'In such a case of mere permissive use, the liability of the owner would rest, not alone upon the fact of ownership, but upon the combined negligence of the owner and the driver; negligence of the owner in intrusting the machine to an incompetent driver, and of the driver in its operation.' "

Particularly should this be the rule, where the one to whose charge the car is committed is prohibited from operating it by statute. Section 6315, Rem. Comp. Stat., subd. 1, provides:

"It shall be unlawful for any person under the age of fifteen (15) years to operate or drive any motor vehicle upon the highways of this state, except when accompanied by parent or guardian."

■■ If it was negligence for the father to intrust his automobile to his thirteen year old boy, then the next question to be determined is whether there was any causal connection between this negligence and the injury complained of. Was the act of the father in placing and leaving a loaded gun in the automobile, intrusted to his minor son, actionable negligence? Firearms are dangerous weapons, and they may become doubly dangerous when placed in an automobile which is turned over to an inexperienced young boy for purposes of operation. Furthermore, Harvey, according to the testimony of his father, who was called as a witness by appellants, had never operated the car alone previously. The father was asked:

"Q. How long had Harvey been driving it? A. He just practiced driving when he was along with his parents."

Moreover, as far as the evidence shows, Harvey had no knowledge of the presence of the gun. Therefore, it becomes pertinent to determine whether the father was negligent, under all the attendant circumstances, in placing and leaving the gun in the car, and whether such act was the proximate cause of the injury. This is a question, of course, to be determined by the jury under proper instructions.

This is not a case of negligent *handling* of a gun, but rather one of the negligent *placing* of a gun. Persons who leave highly dangerous instrumentalities where young children may come in contact with them, and where mischief may result, should answer in damages for the mischief, if their want of care is the proximate cause of the wrong or damage done. *Salisbury v. Crudale,* 41 R. I. 33, 102 Atl. 731; *Phillips v. Barnett,* 2 City Court Rep. (N. Y.) 20; *Dickens v. Barnham,* 69 Colo. 349, 194 Pac. 356, 12 A. L. R. 809, and note; 20 R. C. L., p. 51, § 47.

As to the degree of care required of those having possession or control of dangerous instrumentalities or explosives, this court, in *Olson v. Gill Home Investment Co.,* 58 Wash. 151, 108 Pac. 140, 27 L. R. A. (N. S.) 884, quoted approvingly from *Mattson v. Minnesota & N. W. R. Co.,* 95 Minn. 477, 104 N. W. 443, as follows:

"The degree of care required of persons having the possession and control of dangerous explosives, such as firearms or dynamite, is of the highest. The utmost caution must be used in their care and custody, to the end that harm may not come to others from coming in contact with them. The degree of care must be commensurate with the dangerous character of the article (Keasbey on Electric Wires, [2d ed.] 269, 270), and is greater and more exacting as respects young children. As to such, the care required to be exercised is measured by the maturity and capacity of the child. *Railway Co. v. Stout,* 17 Wall. U. S. 657, 21 L. Ed. 745.

What would constitute reasonable care with respect to adults might be gross negligence as applied to a young child. 7 Am. & Eng. Ency. Law (2d ed.) 441, and cases cited.''

Section 2560, Rem. Comp. Stat., in part provides:

''No minor under the age of fourteen years shall handle or have in his possession or under his control, except while accompanied by or under the immediate charge of his parent or guardian, any firearm of any kind for hunting or target practice or for other purposes.''

A well considered case and one frequently quoted by American courts is that of *Sullivan v. Creed,* [1904] 2 I. R. 317, Vol. 2. British Ruling Cases, p. 139. There the defendant left a loaded gun inside a fence on his land beside a gap, from which a private path led over defendant's lands from the public road to his house. The defendant's son, aged between fifteen and sixteen years, coming from the road through the gap on his way home, found the gun. He went back with it to the public road, and, not knowing that it was loaded, pointed it, in play, at the plaintiff, who was on the road. The plaintiff was injured and brought suit. The lower court directed a verdict in favor of the defendant. An appeal was taken to the King's Bench Division where the case was reversed, and, among other things, the court said:

''There is no doubt, in my mind, that the defendant was negligent in leaving the gun where he did. It was argued that, although it might popularly be said that he was so, in law he was not negligent, because it is said that he did not, at the moment when the act was done, violate any duty to the plaintiff, or, indeed, to anyone. I do not agree in this. I hold that anyone who is in possession of a dangerous instrument owes a duty to the public, or at least to such members of the public as are reasonably likely to be injured by its misuse, . . .''

An appeal was then taken to the Court of Appeals which affirmed the King's Bench Division.

Therefore, in the instant case, whether it was negligence on the part of the father to intrust his thirteen year old child with his automobile, whether it was negligence to place and leave the loaded gun in the rear seat, whether the accident resulted by reason of the failure of the father to exercise due care, or whether the accident happened by reason of an intervening independent cause, became questions for the jury to determine. This issue should have been submitted to the jury under proper instructions.

We refrain from comment whether, in the event of a retrial, the jury should be instructed on the theory of agency. That question must necessarily be determined by the trial court after all of the testimony in the case shall have been submitted.

The judgment appealed from is reversed, and the cause remanded for a retrial.

MILLARD and FULLERTON, JJ., concur.

MITCHELL, J., concurs in the result.

BEALS, J., dissents.