Albert L. DAVIS, Appellee,

v.

Kenneth CROOK and William Briggs, Appellants.

No. 59217.

Supreme Court of Iowa.

Jan. 18, 1978.

502

Roy W. Meadows, of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellants.

Lewis M. Girdner, of Brierly, McCall, Girdner & Chalupa, Newton, for appellee.

Heard by MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

June 1, 1971, while working for Newton Sheet Metal, Inc., plaintiff suffered an amputation of his fingers and a portion of both thumbs in an unshielded metal shear machine. He brought this action against defendants Briggs and Crook, president and vice president of the company. These defendants were also principal stockholders and chief operating officers of this small corporation employing approximately ten persons.

Plaintiff asserted and sought to prove Briggs and Crook, as co-employees, had accepted and breached a company-imposed duty relating to the safety of other employees, and specifically in negligently failing to provide a safe and suitable shear machine and safe conditions around it. Plaintiff also claimed defendants were negligent in failing to provide this machine with guards as required by § 88.6, The Code, 1971.

From the evidence the jury could have found plaintiff was approaching the shear machine carrying a piece of metal to be cut. He tripped over accumulated metal pieces on the floor and fell into the machine, tripping an exposed foot-operated lever which activated the blade when plaintiff's hands were beneath it.

The jury returned a verdict of $140,000 against both defendants. Upon their appeal, we affirm.

Other relevant evidence will be referred to in the following divisions.

I. *Motions for directed verdict.*

Defendants contend plaintiff failed to generate a jury issue that either of them owed him a duty to provide a shear shield or clean up around the machine, and therefore the court should have sustained their separate motions for directed verdict.

The basic applicable common law was identified in *Craven v. Oggero*, 213 N.W.2d 678, 682 (Iowa 1973). A mere relationship

of co-employees imposed no duty on one to act for the safety of the other. Only where the common employer has placed a safety-related duty on an employee, either expressly "or by clear implication," which he or she has accepted, does the latter have a personal duty to act for the safety of other employees.

In *Kerrigan v. Errett*, 256 N.W.2d 394, 397 (Iowa 1977), we adopted four criteria for determining whether a co-employee is liable under common-law standards for injuries received in work-related accidents. We now apply these four factors to conclude whether plaintiff produced sufficient evidence to support a necessary and underlying jury finding that common-law personal duties for plaintiff's safety were assigned to and accepted by defendants.

In considering a motion for directed verdict the court views the evidence in the light most favorable to the party against whom the motion was made. Rule 14(f)(2), Rules of Appellate Procedure. Every legitimate inference which may reasonably be derived therefrom must be carried to the aid of the evidence. If reasonable minds can differ on the issue it is for the jury. *Becker v. D & E Distributing Co.*, 247 N.W.2d 727, 729–730 (Iowa 1976), and citations.

■ The first criterion identified by *Kerrigan* requires a finding the employer owed a duty, breach of which caused the damage for which recovery is sought. The record before us adequately meets this test. The company owed plaintiff a duty to provide him a reasonably safe work area and equipment. There was abundant evidence this unguarded machine violated industrial standards and was dangerous. From other evidence the jury could have found the work area was littered and unsafe. The jury was justified in finding these conditions combined in proximately causing plaintiff's injury.

Evidence to meet the other criteria is less satisfactory, but minimally sufficient to generate a jury question.

No formal corporate action is disclosed which would prove the company's duty was delegated to Briggs and Crook. This is not surprising in so small a corporation. There is no indication plaintiff ever took the depositions of these defendants. Except for brief and carefully restricted testimony by Briggs on an unrelated subject, neither took the witness stand. Plaintiff thus was unable to support his case through cross-examination.

On the other hand, there is a clear implication each of these defendants, as an employee of the corporation, was delegated and assumed the duty to provide for safety of the other employees.

Crook was in charge of the shop activity more than Briggs, and directly supervised the work there. He used the shear machine. We already have referred to the evidence scrap metal would accumulate around this machine. Briggs testified Crook ordinarily would be the person who "designated the cleanup duty on a particular day." The last reported cleanup was about one week before plaintiff's injury. Loy, safety officer with the Iowa state bureau of labor, testified without objection it was Crook with whom he dealt in plant safety inspections shortly after June 1, 1971, and who signed two safety inspection reports.

Briggs usually did the hiring, firing, and assignment of work. He was the person to whom employees ordinarily made complaints concerning safety hazards or problems. He gave instructions on wearing hard hats. Briggs briefly instructed plaintiff in operating the shear machine and told him "to keep my damned fingers out of there or it would cut them off." Briggs apparently also took occasional responsibility to direct an employee to clean up scraps and debris, including the area of the shear machine.

There is not a scintilla of evidence that Crook or Briggs as operating officers ever delegated a duty of overseeing safety to any other person or persons. We also deem it significant no foremen or other supervisory personnel were interposed between

these defendants and their co-employees. See *Miller v. Muscarelle*, 67 N.J.Super. 305, 170 A.2d 437 (1961). Both Crook and Briggs obviously had knowledge of the unguarded blade on the shear machine. Both occasionally, but too infrequently, carried out a responsibility for cleanup so as to provide a safe place to work around the machine.

 In this jurisdiction, liability of a co-employee may be grounded on "nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty." *Kerrigan*, supra, 256 N.W.2d at 397. In our judgment the evidence creates a jury question whether these operating officers had personally charged themselves with responsibility for safety measures to protect their fellow employees. See *Moose v. Rich*, 253 N.W.2d 565, 571 (Iowa 1977); Restatement of Agency 2d, § 350, pp. 119–121 (1958).

The second branch of defendants' motions for directed verdict related to defendants' liability under § 88.6, The Code, 1971:

"It shall be the duty of the owner, agent, superintendent, or other person in charge of any workshop, manufacturing or other industrial establishment * * * to * * * protect, by guards or housing, all * * * saws, planes, and other machinery, when so located or used that employees may receive injury thereby."

This section was later repealed by Acts 64 G.A. ch. 1028, § 1 (1972).

Each defendant's motion asserted there was no showing he was in charge of the shop or the machine, and in any event civil liability could not be grounded on the statute because a violation subjected the violator to a criminal penalty.

 · We hold the jury could have found from the evidence both defendants were in charge of the plant. Upon such finding, both had a statutory responsibility to provide a guard for the shear machine. We conclude in division II, *infra*, that § 88.6 is

an applicable standard of care despite the criminal penalty for its violation.

 Finally, defendants' motions asserted plaintiff was contributorily negligent as a matter of law. Generally questions of contributory negligence and proximate cause are for the jury; it is only in exceptional cases that they may be decided as a matter of law. Rule 14(f)(10), R.Ap.P. Whether negligence, once proven, was a proximate cause is an issue which only in exceptional cases may be decided as a matter of law. See *Rubel v. Hoffman*, 229 N.W.2d 261, 264 (Iowa 1975); *Osterfoss v. Illinois Central Railroad*, 215 N.W.2d 233, 238 (Iowa 1974); *Kastler v. Iowa Methodist Hospital*, 193 N.W.2d 98, 103 (Iowa 1971).

 We find no exceptional circumstances in this record which would permit the court to decide, as a matter of law, the issues of plaintiff's negligence and proximate cause.

Trial court was right in overruling the motions for directed verdict.

II. *Instructions.*

Defendants excepted to certain instructions submitted by trial court, and excepted to the court's failure to give their requested instructions.

 Read together, we find the submitted instructions adequately explain the standards for determination of individual liability of co-employees for work-related injuries as laid down in *Kerrigan*, supra, 256 N.W.2d at 397, and *Craven*, supra, 213 N.W.2d at 682–683. Matters raised in defendants' requested instructions were substantially incorporated in the instructions which were given. No error results from a failure to submit the issues in the form requested. See *Porter v. Iowa Power and Light Company*, 217 N.W.2d 221, 235 (Iowa 1974).

Defendants vigorously contend trial court erred in permitting the jury to determine their liability based on § 88.6, The Code, 1971, quoted in division I. They argued plaintiff's petition originally alleged only a

common-law theory of recovery based on defendants' failure to provide guards for the shear machine. Defendants assert the April 3, 1974, amendment to petition first asserted a statutory liability theory. Because this was after the statutory limitation period had expired, the issue was not properly in the case. They rely on *McCornack v. Pickerell*, 229 Iowa 457, 294 N.W. 746 (1940) and *Page v. Koss Const. Co.*, 219 Iowa 1017, 257 N.W. 426 (1934).

*McCornack*, supra, followed *Page*, supra, which applied the rule:

"[I]f the amendment pleads a new and independent cause of action, it is to be treated as the commencement of a new suit, and, if the period of limitation has intervened, the amendment is subject to demurrer. If, however, the amendment merely amplifies and enlarges the cause of action originally pleaded, it will be upheld notwithstanding the statute of limitations."

—219 Iowa at 1023, 257 N.W. at 429

Plaintiff does not claim defendants failed to timely and properly raise this issue and preserve the asserted error when they failed to obtain a court ruling on their motion to strike the delayed amendment. Rather, he meets the issue head on, arguing his first pleading alleged defendants' negligence in failing to equip the shear machine with a guard, defendants could not have been surprised, and our law does not require a pleader to allege whether a specification of negligence is grounded on common law or statute.

 Our decisions support plaintiff's position. Amendments are the rule and denials of amendments the exception. *Ackerman v. Lauver*, 242 N.W.2d 342, 345 (Iowa 1976); *Atlantic Veneer Corporation v. Sears*, 232 N.W.2d 499, 503 (Iowa 1975). It is no longer necessary to plead the Iowa statutes upon which a party relies. Rule 94, R.C.P.; *Wilson v. Jefferson Transportation Co.*, 163 N.W.2d 367, 370 (Iowa 1968) ("If the evidence justifies submission of the charge under the statute, the specification was properly submitted as a statutory violation."); *Coleman v. Hall*, 161 N.W.2d 329,

332 (Iowa 1968). A pleader is entitled to claim as many grounds of actionable negligence as flow from his or her pleaded statement of facts. *Rosin v. Northwestern States Portland Cement Co.*, 252 Iowa 564, 568, 107 N.W.2d 559, 561 (1961).

 We hold plaintiff's amendment merely amplified and enlarged the cause of action he first pled. The § 88.6 violation was an issue in the case which required a jury instruction.

Nor are we persuaded by defendants' argument the instruction should not have been given because § 88.6, The Code, 1971, was a criminal statute and did not create a civil duty in plaintiff's favor.

*Montgomery v. Engel*, 179 N.W.2d 478 (Iowa 1970), presented this court with the issue whether a landlord's violation of a city housing ordinance, which provided for enforcement through a penal provision, could serve as a basis for civil liability in a negligence action. Quoting with approval from 2 Harper and James, The Law of Torts, § 17.6, p. 997 (1956) and Restatement of Torts 2d, § 287, p. 29 (1965), we held the ordinance imposed a duty on the landlord upon which civil liability could be predicated. 179 N.W.2d at 482–483. Thus the fact, standing alone, that § 88.6, The Code, 1971, was a criminal statute does not make it inapplicable here.

More recently in *Hall v. Montgomery Ward & Co.*, 252 N.W.2d 421, 423–424 (Iowa 1977), we studied the impact of § 611.21, The Code, and reaffirmed an early interpretation holding civil remedies may in all cases be enforced for injuries sustained by reason of public offenses. While affirming criminal-statute based tort liability in *Hall*, we said the injured party must be within the protection of the statute and his or her harm must flow from the statutorily proscribed conduct. *Id.*, 252 N.W.2d at 424; see *Wyandotte Trans. Co. v. United States*, 389 U.S. 191, 202, 88 S.Ct. 379, 386, 19 L.Ed.2d 407, 415–416 (1967); *Hansen V. Kemmish*, 201 Iowa 1008, 1011–1012, 208 N.W. 277, 279 (1926).

*Koll v. Manatt's Transp. Co.*, 253 N.W.2d 265 (Iowa 1977), involved a wrongful death action predicated on an employer's alleged violation of standards embodied in the federal and state health and safety acts. We there relied on *Hansen v. Kemmish,* supra, in holding violation of these statutory standards was negligence per se to defendant's employees and evidence of negligence to all persons likely to be exposed to injury by such violation. *Id.,* 253 N.W.2d at 270.

Section 88.6, The Code, 1971, was clearly designed to protect the employee from unguarded machinery. There was evidence the statutory violation contributed to plaintiff's injury. We hold in these circumstances this criminal statute created a civil duty.

III. *Admissibility of testimony concerning safety inspections.*

Defendants' motion in limine sought suppression of Loy's testimony. Loy, Iowa state bureau of labor safety officer, inspected the company plant twice shortly after plaintiff's injury and prepared investigative reports. Defendants posited their motion on § 88.12, The Code, 1971, which provided in part that "[n]o statement contained in any such report shall be admissible in any action arising out of the accident therein reported." This motion was overruled. No objection on this ground was urged at trial.

Loy did not testify concerning any "statement contained in any such report." He testified without objection he made the inspections on June 7 and June 14, 1971, the shear machine had no guard, and in his opinion it was not a safe machine.

■ The most which might be claimed for § 88.12, The Code, 1971, is its similarity to § 321.271 before the 1967 amendment (62 G.A. ch. 276, § 1) when it provided the automobile accident report of the law enforcement officer should not be admissible in any civil case. See *Grocers Wholesale Coop., Inc. v. Nussberger Truck. Co.,* 192 N.W.2d 753, 755–756 (Iowa 1971). But even then the statutory exclusion did not extend to what the officer observed nor to statements not intended as a report or as information given for a report. *Goodman v.*

*Gonse,* 247 Iowa 1091, 1104, 76 N.W.2d 873, 880–881 (1956); see *Baysinger v. Haney,* 261 Iowa 577, 584, 155 N.W.2d 496, 500 (1968). We hold the same rule is applicable here. Loy's testimony was admissible.

We find no reversible error in this proposition relied on by defendants.

IV. *Other asserted errors.*

Defendants complain the form of verdicts erroneously permitted joint liability on the part of the defendants, because under § 88.6, The Code, 1971, only one individual could be in charge of the workshop or establishment. They further assert under *Craven,* supra, there must be a duty owed by the individual to plaintiff. Defendants argue that common sense dictates two individuals could not have the same duty to the same plaintiff involving the same machine.

■ We are not convinced imposition of liability on one party under § 88.6 necessarily excludes imposition of liability on another. As bearing on this concept see *Lahn v. Incorporated Town of Primghar,* 225 Iowa 686, 689–691, 281 N.W. 214, 216–217 (1938); § 4.1(3), The Code; Sands, Statutes and Statutory Construction, § 21.14, pp. 90–91 (1972).

■ Nor does our *Craven* decision preclude joint liability. Two defendants were held liable in the circumstances of that case. There may be more than one proximate cause of an injury, and concurring negligence, if each meets the proximate cause test, may render several tort feasors jointly and severally liable. *DeYarman v. State,* 226 N.W.2d 26, 28 (Iowa 1975).

■ Defendants timely objected to trial court's admission of pamphlets relating to metal industry safety standards. A number of these publications were admitted upon proper foundation. We find no error here. See *Evans v. Howard R. Green Co.,* 231 N.W.2d 907, 913 (Iowa 1975); *Jorgensen v. Horton,* 206 N.W.2d 100, 103 (Iowa 1973); *Cronk v. Iowa Power and Light Company,* 258 Iowa 603, 612, 138 N.W.2d 843, 848 (1965).

Defendant assigns as error trial court's inclusion in the case statement of the phrase "when a metal shear accidentally started" as being contrary to the evidence. The evidence disclosed plaintiff turned the switch to power the machine before he picked up the metal to be cut. He asserted his trip and fall caused him accidentally to hit the shear-activating foot lever.

When trial court's case statement is read in full, it is apparent the above phrase related to a recitation of plaintiff's claims. The case statement presented the issues fairly. While addition of the paragraph suggested in Iowa Uniform Instruction 1.15 might have avoided this exception, we find no reversible error here. See *Perry v. Iowa State Highway Commission*, 180 N.W.2d 417, 421 (Iowa 1970).

We have examined all of the other contentions made by defendants, and find no reversible error.

The judgment below is therefore affirmed.

AFFIRMED.